CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
DEC 12 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:11CR00020 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| ANTONIO MICHAEL WILSON, | ) | |
| | ) | |
| | ) | By:   B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a single count Indictment charging defendant in Count One with knowingly and intentionally distributing a mixture of a substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, Sections 841(a)(1) and 841(b)(1)(C) of the United States Code. On December 9, 2011, a plea hearing was conducted before the undersigned.[1] The defendant was placed under oath and testified his full legal name is Antonio Michael Wilson and that he was born on September 27, 1996.[2] The defendant informed the court that he gone through the twelfth (12th) grade in school. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of

---

[1] A plea hearing was originally set for December 5, 2011. However, the undersigned received a letter from the defendant on the morning of December 5, 2011 requesting a new attorney because of lack of communication with counsel. The plea hearing was continued until December 9, 2011 in order to grant the defendant and his counsel a chance to review and discuss the evidence against him and matters relating to the proposed plea agreement. At the December 9, 2011 plea hearing before the undersigned, the defendant withdrew his request for a new attorney and expressed that he was satisfied with his counsel.

[2] It appears clear the defendant misspoke at this point in his testimony. Review of the case records indicates that he was born on September 27, 1986.

the charges against him and the consequences of pleading guilty to those charges. The defendant testified that he was not under the influence of alcohol, medicine, or any drug. The defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held, and that he understood the purpose of the proceedings was to take his plea of guilty to Count One. The defendant testified that he had received a copy of the Indictment, and that he had fully discussed the charges therein and any defenses thereto. The defendant stated that he was pleading guilty because he was, in fact, guilty of the offenses charged. The defendant testified that he understood that Count One is a felony, and if his plea is accepted, he will be adjudged guilty of those offenses.

The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged in Count One is twenty (20) years imprisonment and a fine of $1,000,000, together with a term of supervised release. The defendant was informed that parole has been abolished, and that if he is sentenced to prison, he will not be released on parole, but on supervised release, a violation of which could result in additional incarceration. Finally, the defendant testified that he understood that, upon conviction, he will be required to pay a special assessment of $100 per felony count.

The defendant was further informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that the Sentencing Guidelines are no longer mandatory, but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case. The defendant also testified that he

understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

The defendant acknowledged it was stipulated that the 2010 edition of the United States Sentencing Guidelines Manual was applicable to his offenses. The defendant further acknowledged that, in the Plea Agreement, it was stipulated that Sentencing Guideline 2D1.1 is applicable to his conduct, indicating an offense level of twelve (12). The defendant stated that he understood that even if he fully cooperates with law enforcement, the government is under no obligation to file a motion to reduce his sentence for his substantial assistance, and if the government makes the motion, it is up to the court to determine how much of a departure, if any, should be made. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the Plea Agreement, the government would recommend a two-level (2) reduction under USSG § 3E1.1(a), and, if applicable, the government would move that he be given an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant also acknowledged his consent to the abandonment, official use, or destruction of anything seized by law enforcement during the investigation of his case. The defendant agreed that he had knowingly and voluntarily waived his rights to request or receive any records pertaining to the investigation or prosecution of his case, including any records that may be

3

sought under the Freedom of Information Act or the Privacy Act of 1974. The defendant acknowledged his monetary obligations under the plea agreement, which calls for such to be due immediately and subject to immediate enforcement.

The defendant acknowledged that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in the Indictment, including any facts related to sentencing. The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the Government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a finding of guilt.

The defendant testified that he understood that, under the terms of the agreement he was waiving his rights to appeal, but that he was not waiving his right to appeal or have his attorney file a notice of appeal as to any issue which cannot by law be waived. The defendant acknowledged that he had agreed to waive his right to collaterally attack any order issued in the case, unless such attack is based on ineffective assistance of counsel.

The defendant testified that he understood that the plea agreement required his continued cooperation with law enforcement in disclosing any knowledge of criminal activity. The defendant acknowledged that any untruthfulness on this part could void the plea agreement. The defendant also testified that he understood that, if he is adjudged guilty of these charges, he may be deprived of

4

valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been effective. The defendant's counsel additionally stated that the defendant had voluntarily and freely entered into the plea agreement and was voluntarily tendering his plea before the court. The defendant asked the court to accept his plea of guilty to Count One of the Indictment and acknowledged that once he entered his plea of guilty, he would not be entitled to withdraw it. Defendant pled guilty to Count One of the Indictment.

**THE GOVERNMENT'S EVIDENCE**

The defendant and the Government agreed to a Stipulation of Facts. The Stipulation of Facts having been filed in open court, the evidence presented therein regarding the offense charged is as follows:

In the fall of 2010, Detective Paul Best of the Jefferson Area Drug Enforcement Task Force ("JADE") was investigating Calvin E. Miller for possible drug-dealing. On November 3, 2010, a JADE informant telephoned Mr. Miller to arrange to buy drugs. During the call, Mr. Miller said that he was at the Cherry Street Barbershop (which is in the Western Judicial District of Virginia), arranged to sell the informant an eighth-ounce of powder cocaine, and told the informant that "his peoples" would have the drugs at the barbershop. Detective Best listened to and taped that telephone call.

Detective Best fitted the informant with an audio/video recorder and gave him JADE-issued money to buy the cocaine from Mr. Miller. When the informant arrived at the barbershop, Mr.

5

Miller took the informant outside. After a short time, Mr. Miller directed the informant to go into the barbershop. The informant met Antonio Wilson near the bathroom, where the informant saw Mr. Wilson and paid him $200 for what laboratory testing confirmed was 2.7 grams of cocaine hydrochloride. When the informant asked Mr. Wilson whether to contact Mr. Wilson or Mr. Miller to buy drugs again, Mr. Wilson told the informant to "holler at" Mr. Miller.

Detective Best and JADE watched the drug deal remotely, and once it was over, Detective Best searched the informant, took and field-tested the cocaine, removed the taping equipment, and made sure that the equipment had recorded the deal.

The parties agree that this evidence, if un-contradicted, would be sufficient to find Mr. Wilson guilty beyond a reasonable doubt of the crime with which he stands charged.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions, and recommendations:

(1) The defendant is fully competent and capable of entering into a plea agreement and making an informed plea;

(2) The defendant is aware of the nature of the charges and the consequences of his plea;

(3) The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

(4) The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

6

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One and adjudge him guilty of that offense. The undersigned further DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for February 29, 2012 at 11:00 a.m. before the presiding District Judge in Charlottesville.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within fourteen (14) days could waive appellate review.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: /s/ 
United States Magistrate Judge

12/12/2011
Date